**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Flynn Lee, Rochion Gregg, and Andrea Jordan | )( | |
| | )( | |
| *Plaintiff* | )( | |
| | )( | |
| | )( | |
| v. | )( | CIVIL ACTION NO. 1:25-cv-00556 |
| | )( | |
| Carol Johnson, | )( | |
| And THE CITY OF AUSTIN, | )( | |
| | )( | |
| *Defendants* | )( | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

NOW COME Plaintiffs Flynn Lee, Rochion Gregg and Andrea Jordan, complaining of Defendant City of Austin, and for cause of action would show the Court the following:

**Discovery Control Plan**

1. As provided in Rule 190, Texas Rules of Civil Procedure, Plaintiffs intend to conduct discovery under Level 3.

**Plaintiffs**

2. Plaintiff, Flynn Lee, is an individual whose address is PO Box 300293 PO Box 300293.

3. Plaintiff, Rochion Gregg, is an individual whose address is 5700 Hammermill Run, Austin, Texas 78744.

4. Plaintiff, Andrea Jordan, is an individual whose address is 14300 Tandem Blvd., #175. Defendant.

5. Defendant, City of Austin, a city incorporated in the State of Texas, may be served with process by serving Jesus Garza, the City Manager of City of Austin by personal delivery at 301 W. 2nd, 3rd Floor Austin, TX 78701.

**Venue**

6. Venue is proper in this county in that the events giving rise to this cause of action occurred within Travis County.

**Jurisdiction**

7. The damages sought in this suit are within the jurisdictional limits of the Court. As required by Rule 47, Texas Rules of Civil Procedure, Plaintiffs state that Plaintiffs seek monetary relief over $1,000,000.

**Facts**

8. Carol Johnson began her tenure as head of the Civil Rights Office for the City of Austin on February 16, 2021.

9. Johnson began displaying behavior that was derogatory, demeaning, discriminatory, and unsustainable. Eventually, after much complaining, the City of Austin engaged an outside law firm to investigate. On June 8, 2022, the Lynch Law Firm report was released. This report corroborated in large part the allegations that Plaintiffs make herein[1]. Curiously, the Report seems to have left out some information.

10. Johnathan Babiak, Jennifer Harlless, Enrique Soranaa, and Juanita Martinez were all interviewed by law firm in connection with producing the Report. Each one has indicated that they expressly stated that members of the Office who were black were treated worse than they

[1] Plaintiff's incorporate the factual findings and allegations in the Report for all purposes.

were. The rudeness, harsh penalties, demeaning comments, extra and changing job duties, and the general hostile environment were all worse for the African-American members of the staff.

11. Other staff members were not disciplined in the same manner as Lee for missing a meeting, as Gregg for allegedly not submitting time quickly enough, and as Jordan for allegedly being disrespectful. It is to be noted that the previously mentioned Office members were also questioned in connection with the lawsuit Johnson filed in Oregon and made similar comments. The Office speculation was that Johnson was disciplined in Oregon for favoring whites so she made a special effort to be more harsh with African-Americans in Austin. This behavior gives rise to claims under Section 1981 of the Civil Rights Act.

**Retaliation**

12. Plaintiff Lee notes that on June 4th, 2021, he was docked pay for a day and had 8 hours of PTO removed because a personal medical situation caused him to miss an EAP training. This was in retaliation for bringing concerns about the running of the Office to the attention of Johnson and Gail McCant. It is noteworthy that many other members of the staff missed meetings without disciplinary action. The Report corroborated that retaliation occurred in the Office. Allegation 2 demonstrates that asking questions about Office policies can lead to retaliation that placed employees in danger. Page 46 of the Report indicates that Johnson's reprimand of Jordan was so retaliatory that McCant refused to issue it stating that she refused to "be the tool of retaliation." Again, all of this was exacerbated because of Plaintiff's race.

13.From the onset of the City's much delayed investigation of Johnson, Johnson has been placed on paid administrative leave. That is to say while she has no real responsibilities, she is paid her salary and receives her benefits. Conversely, Plaintiffs are obliged to exhaust the hard earned leave they have accumulated over the course of longstanding employment delivering for

the people of Austin. The City then chose to offer no paid administrative leave to Plaintiffs when requested. This is to say that the City corroborated the hostile work environment and retaliation Plaintiffs complained of then rewarded the perpetrators of this hostile work environment and retaliation with paid leave while simultaneously failing to extend the same to the victims. All of this in the City office responsible to investigate and correct just this sort of action. In so doing, the City operationalizes the harassment and retaliation that Plaintiffs claimed. All of this has created more hardship for Plaintiffs.

14.In continuing to perpetuate the cycles complained of, the City has multiplied Plaintiffs' damages. Andrea Jordan has been forced disregard serious and pervasive harm to health to return to work out of economic necessity. Plaintiff Jordan was recommended to obtain in patient treatment. Unfortunately, she cannot afford to be out of work as the City has required her to exhaust her available leave. The office is in apparent chaos with interns entering information into the system. Apparently, untrained or little trained interns are drafting charges in a federal database. Rather than the administrative job, she is had to become the trainer and be the back stop of the for all employment issues. Informed that she was in the best position to determine when the interns should be "let loose." Ms. Beverly said she felt bad. Plaintiff Jordan was additionally tasked with Plaintiff Lee's cases in addition to her own. Neither of which she was able to actually do since the supervision of the interns monopolized most of her time. Plaintiff Jordan was tasked with the duties of her job, plus Plaintiff Lee's, plus a lead investigator, and a trainer. Notably her compensation remains unchanged. The write up she received in March still remains unaddressed and City policy requires a response in 10 days.

15. Plaintiffs Lee and Gregg fair little better. They continue to be treated differently from other people on account of their race and continue to be the victim of sustained City actions

which disadvantage them and caused their workplace to be hostile. Because of the City's failure to make any sort of reasonable accommodations even after their own investigation substantiated the allegations against the city, Plaintiff Gregg was forced into retirement prematurely. As was Plaintiff Lee.

16.This situation bears the hallmarks of intentionality. This is because the Plaintiffs have repeatedly asked for things such as the shared leave program and the necessary information is not provided until the point at which Plaintiffs are not paid. This is evidence of continued hostility. It appears the City purposely created a situation whereby Plaintiffs were starved into compliance. It must be remembered that the Cities' actions caused the Clients to exhaust their leave because of the hostile environment. Frankly, this behavior is abhorrent.

17.Because of the egregious nature of this behavior Plaintiffs have been subjected to severe and pervasive medical claims. Those complaints that are either the direct result of or were exacerbated by the City's actions have real and lasting consequences. In addition to the steep medical costs and the pain and suffering Plaintiffs have suffered, they have also had adverse employment actions. Each of these Clients was obliged to deplete their leave to deal with the results of the City's malfeasance. Plaintiff Jordan was obliged to return to work rather than getting the treatment she needs. Plaintiffs Lee and Gregg were each required to retire long before they planned with the predictable results to their retirement income.

18. Both Plaintiffs Lee and Gregg have been constructively terminated. Plaintiff Jordan also suffered adverse employment activity.

**Causes of Action**

**Americans with Disabilities Act (ADA) Claims**

19. Plaintiff Rochion Gregg was denied reasonable accommodations in violation of the Americans with Disabilities Act. Due to her disability, Gregg requested extra time to complete projects as a reasonable accommodation. This request was denied without merit. After the request was denied, Johnson increased her unreasonable demands, which Gregg believes were intentional efforts to aggravate her known medical condition and ultimately force her to quit or to terminate her employment.

20. Johnson's unreasonable demands on Gregg included:

a. Unreasonable expectations
b. Unclear expectations
c. Last minute changes on presentations
d. Deadline changes
e. Exclusion from meetings despite being the project lead
f. Attempts to make Gregg look incompetent despite her expertise in Fair Chance Hiring

21. On April 14th, Gregg experienced a nervous breakdown and severe anxiety after being badgered through demanding and threatening phone calls and emails while doing a community presentation. As a result, Gregg's doctor placed her on immediate FMLA due to her medical condition.

22. Plaintiff Flynn Lee was denied reasonable accommodations when he requested an ergonomic workstation. Lee's requests for an ergonomic evaluation began in 2016 and continued for years without proper resolution. It wasn't until Lee involved Carol Guthrie, AFSME Union President, that action was taken to provide the correct desk/set-up. Lee informed Johnson and HRD staff that he had a heart condition and back issues requiring these accommodations. The

heart condition was particularly important as the stress and trauma of the discrimination exacerbated the symptoms.

23. Lee believes he was retaliated against for involving the union in obtaining his ergonomic desk. This retaliation included:

a. Being written up, losing 8 hours of pay, and 8 hours of vacation for missing a non-job-related EAP training

b. Being disciplined on his SSPR regarding communication, trustworthiness, and performance without prior documentation or conversations

c. Being evaluated on issues not part of the City of Austin's core competencies or policies and procedures

24. Plaintiffs Lee, Gregg, and Jordan were all denied reasonable accommodations when they requested to use Leave Bank Hours. Despite having documented FMLA qualifying events that should have made them eligible for the City of Austin's Leave Bank program, their requests were denied by Michelle McLaren and Amanda Noble.

25. Plaintiffs were also denied Shared Accrued Leave, which provides voluntary donations of accrued vacation, sick, and exception vacation to department workers in cases of catastrophic events or severe conditions.

26. Plaintiffs had documented FMLA qualifying events and qualified for both Leave Bank and Shared Accrued Leave hours. The denial of these accommodations constitutes violations of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, as amended, and The Texas Commission on Human Rights Act, as amended.

**Hostile Work Environment**

19. Plaintiffs incorporate the facts and allegations in paragraphs 8 through 18.

20. Defendant created and or condoned a hostile work environment in violation of Section 1983 of the Civil Rights Act of 1866. When a supervisor is the creator of this environment or condones it, a Defendant "demonstrates a deliberate indifference to a plaintiff's constitutional rights." *Southard v. Tex. Bd. of Criminal Justice* , 114 F.3d 539, 551 (5th Cir. 1997). "A hostile work environment interferes with the "enjoyment of all benefits . . . and conditions of the contractual relationship" of employment" *Manatt v. Bank of America, NA*, 339 F.3d 792, 797 (9th Cir. 2003). To establish a hostile work environment claim, a plaintiff must show harassing behavior sufficiently severe or pervasive to alter the conditions of his employment. *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009). "This requires that the plaintiff prove: (1) that he belongs to a protected group; (2) that he was subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee, such as race or national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Edmond v. Univ. of Miami*, 441 F. App'x 721, 8 (11th Cir. 2011).

21. The Report details that Johnson displayed bullying behaviors towards Plaintiffs. Johnson forbade teams members from communicating with one another and with other City employees, purposely isolating employees and creating an environment which altered the terms of Plaintiffs' employment. Staff were not even permitted to send group emails disseminating needed information. This caused an environment of suspicion. Johnson's behavior bizarrely oscillated between cutting off staff and rudely dismissing their questions to criticizing them for being disengaged. Ms. Gregg recounts an event where the result of Johnson's late-night emails,

last minute changes, and constant hectoring in the run up to a public presentations caused a blood pressure spike sufficient to cause her watch to alarm and her fellow coworkers to be concerned. This is just a few such incidents that caused the deleterious mental and physical health situations that occasioned Plaintiffs to seek medical care and absence from the Office. Suffice it to say, the Report determines that the evidence is "ample."

22.As is clear from the foregoing, even before aggressively conducting discovery, Plaintiffs will be able to prevail on this claim.

**Discrimination**

23. Plaintiffs incorporate the facts and allegations in paragraphs 8 through 18.

24. An employer has an affirmative duty to investigate a complaint of discrimination based on race. See, e.g., 42 U.S.C. §2000e, et seq. (Title VII of the Civil Rights Act of 1964 ("Title VII")); 42 U.S.C. §1983. In order to prove that the defendant employer has treated the plaintiff differently than other similarly situated employees, the plaintiff must show that the employer "gave preferential treatment to [an employee outside the protected class] under 'nearly identical' circumstances." *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991). Plaintiffs will have little trouble demonstrating this. Plaintiffs were subjected to a worse environment because of their race. This was true in discipline because of not attending surprise meetings, disparate treatment on challenges to authority, and hectoring and harassment in preparation for meetings. In fact, it is curious that the Report does not corroborate this given the testimony the investigators elicited. It is not merely that Plaintiffs state that they were treated differently specifically because of their race, Johnathan Babiak, Jennifer Harlless, Enrique Soranaa, and Juanita Martinez have also stated as much in the investigation.

**Retaliation**

25. Plaintiffs incorporate the facts and allegations in paragraphs 8 through 18.

26. It is unlawful to retaliate against a party for complaining about conduct that violates Section 1983 of the Civil Rights Act of 1866. This protection is sacrosanct. *Smith v. Rosebud Farm, Inc.*, 898 F.3d 747, 752-53 (7th Cir. 2018). "This protection encompasses retaliation claims when an employer takes an adverse employment action against an employee for asserting rights protected" by federal law. *CBOCS West Inc. v. Humphries*, 553 U.S. 442, 446, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008). The Report makes clear that retaliation occurred. It further makes clear retaliatory harassment also occurred.

This is actionable as "a campaign of retaliatory harassment [can amount] to an adverse employment action." *Breaux v. City of Garland*, 205 F.3d 150, 160 (5th Cir. 2000). Because the Report details the actions taken by the City and its employees that constituted harassment, Plaintiff carries her burden of a demonstrating this. At a minimum this includes those actions described in the Report.

**Violation of the Americans with Disabilities Act**

27. Plaintiffs incorporate the facts and allegations in paragraphs 8 through 26.

28. Defendants violated the Americans with Disabilities Act by failing to provide reasonable accommodations to Plaintiffs, who are qualified individuals with disabilities. These violations include:

a. Denying Gregg's request for extra time to complete projects
b. Failing to provide Lee with an ergonomic workstation in a timely manner
c. Denying all Plaintiffs access to Leave Bank Hours and Shared Accrued Leave

29. Defendants' actions in denying reasonable accommodations and retaliating against Plaintiffs for requesting such accommodations were willful, deliberate, and in reckless disregard of Plaintiffs' rights under the ADA.

30. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered and continue to suffer damages, including but not limited to lost wages and benefits, emotional distress, mental anguish, and loss of enjoyment of life.

**Attorney's Fees and Costs**

27. Plaintiffs request judgment for reasonable attorney's fees and costs under Sections 37.009 and 38.001, Texas Civil Practice and Remedies Code.

**Jury Demand**

28. Plaintiffs hereby request a jury trial.

**Initial Disclosures**

29. As provided in Rule 194, Texas Rules of Civil Procedure, required Initial Disclosures of all items listed in Rule 194.2 must be made at or within 30 days after the filing of the first answer unless a different time is set by the parties' agreement or court order.

**Prayer**

Plaintiffs pray that citation be issued commanding Defendant to appear and answer herein and that Plaintiffs be awarded judgment against Defendant for actual damages, pre-judgment interest, post-judgment interest, costs of Court and for all other relief to which Plaintiffs are entitled both in equity and at law.

Respectfully submitted,

Spencer & Associates, PLLC

/s/ Nickolas A. Spencer
9100 Southwest Freeway, Suite 122
Houston, TX 77074
Phone: 713-863-1409
Email: nas@naslegal.com
Bar no: 24102529
Attorney for: Flynn Lee, Rochion Gregg and Andrea Jordan